UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOHN LOPEZ,

                Plaintiff,                         **REPORT & RECOMMENDATION**
                                                                             17 CV 4191 (RJD)(LB)
    -against-

SQ BROOKLYN, INC. and SQ CORONA, INC.,

                Defendants.
------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiff John Lopez brings this civil action against SQ Brooklyn, Inc. ("SQ Brooklyn") and SQ Corona, Inc., doing business as Sneaker Q, ("SQ Corona") (collectively "defendants") alleging that they violated his rights under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law, Art. 6, §§ 191-98 and Art. 19, §§ 650-63 ("NYLL"). Despite proper service of the summons and complaint, ECF Nos. 5–6, defendants have failed to plead or otherwise defend this action. Plaintiff now moves for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure against defendants. ECF No. 14, Motion for Default Judgment; ECF No. 14-1, Supporting Memorandum of Law ("Memo"). The Honorable Raymond J. Dearie referred plaintiff's motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiff's motion should be granted and that a default judgment should be entered in plaintiff's favor against defendant SQ Brooklyn in the amount of $68,655.64 and against defendant SQ Corona in the amount of $21,636.04 (totaling $90,291.68 as set forth in Table C, *infra*).[1]

---

[1] Plaintiff requests $93,545. See Memo at 6. The Court's calculation differs from the amount requested due to discrepancies in plaintiff's Memo. See Section III. A. *infra*.

## BACKGROUND[2]

SQ Brooklyn and SQ Corona were in the business of importing and selling shoes and related items from overseas. See ECF No. 1, Plaintiff's Complaint ("Compl.") ¶ 14. Plaintiff alleges that both SQ Brooklyn and SQ Corona were owned, controlled, and managed by Louis Hong. Id. ¶ 10.

Plaintiff alleges that he was employed by defendants as a cashier and that he processed payments and stocked inventory for defendants from September 2009 to April 12, 2017. Id. ¶¶ 16–17. Throughout his employment, plaintiff alleges that he worked eleven hours or more each day, six to seven days a week. Id. ¶ 22. Plaintiff was paid at his "straight regular rate for all hours worked including overtime hours." Id. ¶ 21. Plaintiff never received written notices or pay statements regarding his rate of pay. Id. ¶¶ 27–30.

## PROCEDURAL HISTORY

Plaintiff commenced this action against SQ Brooklyn, SQ Corona, and Hong on July 14, 2017. See Compl. Summonses were returned executed on SQ Brooklyn and SQ Corona on July 25, 2017. ECF Nos. 5–6. However, when plaintiff failed to file proof of timely service on Hong or show good cause why Hong was not timely served, the Court dismissed the case against Hong without prejudice pursuant to Rule 4(m). ECF Nos. 9, 13. When defendants failed to respond to plaintiff's complaint, plaintiff requested and the Clerk of Court noted entry of the defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. See Clerk's Entry of Default, Oct. 17, 2017. On May 18, 2018, plaintiff moved for a default judgment against the defendants pursuant to Rule 55(b)(2). ECF No. 14. Plaintiff's motion includes plaintiff's

---

[2] The facts are drawn from the uncontested allegations in plaintiff's complaint, and are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F. 3d 105, 108 (2d Cir. 1997) (deeming well-pleaded allegations in complaint admitted on motion for a default judgment).

declaration ("Lopez Decl."), ECF No. 14-2, and plaintiff's counsel's declaration ("Hassan Decl."), ECF No. 14-3.

## DISCUSSION

### I.     Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc., 109 F.3d at 108. In determining whether to issue a default judgment, the Court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain

Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (quoting Leider v. Ralfe, No. 01 CV 3137 (HB) (FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)). In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. Id. (citation omitted). The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## II. Liability

The FLSA provides that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). "To succeed on a FLSA overtime claim, plaintiff must show that: (1) he was an employee who was eligible for overtime (not exempt from the Act's overtime pay requirements); and (2) that he actually worked overtime hours for which he was not compensated." Hosking v. New World Mortg., Inc., 602 F. Supp. 2d 441, 447 (E.D.N.Y. 2009) (citation omitted). In addition to the FLSA, plaintiff also seeks relief under the NYLL. With regard to state overtime wage claims, "the relevant portions [of the NYLL] do not diverge from the requirements of the FLSA," and thus the Court may analyze plaintiff's FLSA and NYLL claims in tandem. Id.; see also 12 N.Y.C.R.R. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate[.]").

4

Plaintiff alleges that defendants are involved in interstate commerce and had gross sales exceeding $500,000. Compl. ¶¶ 31–37. Plaintiff also alleges that his employment by defendants was covered by the FLSA and the NYLL. Id.; Lopez Decl. ¶¶ 6–8; see 29 U.S.C. § 203(s)(1)(A)(ii) (requiring gross revenues exceeding $500,000); N.Y. Labor Law § 651(5) (defining "employee"). Finally, plaintiff alleges that he worked in excess of forty hours per week, and that defendants willfully failed to pay him the overtime premium. Compl. ¶ 47. These allegations, accepted as true, establish defendants' liability under the FLSA and the NYLL. See 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

### III. Damages

It is well established that a default, is "deemed to constitute a concession of all well pleaded allegations of liability," but it is "not considered an admission of damages." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted); see also Credit Lyonnais Secs. (USA), Inc. v. Alcantra, 183 F.3d 151, 155 (2d Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint, with respect to the amount of the damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc, 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court, however, does not need to hold a hearing, as "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06 CV 5924 (ARR) (JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

5

"Under the FLSA, an employee seeking to recover unpaid minimum wages or overtime 'has the burden of proving that he performed work for which he was not properly compensated.'" Jiao v. Shi Ya Chen, No. 03 Civ. 0165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). "When an employer fails to comply with the FLSA's record-keeping requirements . . . [t]he plaintiff is able to meet his initial burden under the statute by relying on his recollection alone." Id. at **8–9 (citations omitted); see also Rodriguez v. Queens Convenience Deli Corp., No. 09 CV 1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) ("[A] plaintiff may meet his or her burden of establishing how many hours he or she worked by relying solely on his or her recollection." (internal quotation and citation omitted)). A sworn declaration from plaintiff may provide a sufficient basis for the Court to determine damages. Maldonado v. La Nueva Rampa, Inc., No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) ("An affidavit that sets forth the number of hours worked is sufficient.").

Here, plaintiff contends that defendants failed to comply with the FLSA's record-keeping requirements. Compl. ¶¶ 27–29; Lopez Decl. ¶¶ 14–15. Plaintiff submits a sworn declaration that he worked for SQ Brooklyn from September 2009 to around mid-April 2016 and that he worked for SQ Corona from mid-April 2016 to April 12, 2017. Lopez Decl. ¶¶ 4–5. He further declares that he worked six to seven days a week, about eleven hours per day. Id. at ¶ 9. During the year, plaintiff states that he worked every week "with the exception of two to four weeks per year. Id. at ¶ 10. Plaintiff's sworn declaration also provides his rate of pay for the relevant time periods. Id. at ¶¶ 11–16. Accordingly, the Court may rely on plaintiff's declaration to determine his damages.

### A. Unpaid Overtime Premiums Under the FLSA and NYLL

Plaintiff seeks recovery of unpaid overtime wages for work he performed between July 14, 2011 and April 12, 2017.[3] Plaintiff may recover unpaid compensation under the FLSA and the NYLL, but when the statutory periods of the FLSA and the NYLL overlap, plaintiff cannot recover "for those unpaid wages under both statutes, because doing so would provide a double recovery." Janus v. Regalis Const., Inc., No. 11 CV 5788 (ARR) (VVP), 2012 WL 3878113, at *7 (E.D.N.Y. July 23, 2012); see also Maldonado, 2012 WL 1669341, at *5 (explaining that a plaintiff may not simultaneously recover under both statutes for the same injury). FLSA claims are limited to unpaid wages that accrued within the two years prior to the commencement of the lawsuit, or three years for willful violations. See 29 U.S.C. § 255(a). Here, plaintiff alleges that defendants willfully violated the FLSA. Hassan Decl. ¶¶ 7–10. Accordingly, the Court applies the three-year limitations period to plaintiff's FLSA claims. See Vinas v. Pullini Subsurface Contractors, Inc., No. 11 CV 2765 (FB) (LB), 2012 WL 6641662, at *4 (E.D.N.Y. Oct. 5, 2012) adopted by 2012 WL 6633929 (E.D.N.Y. Dec. 20, 2012) ("The court deems [willfulness] admitted given defendant's default."). There is a six-year statute of limitations for a violation of the NYLL. See N.Y. Lab. Law § 663(3). Plaintiff filed this action on July 14, 2017. See Compl. Accordingly, plaintiff is entitled to unpaid overtime wages under the FLSA and the NYLL for work he performed between July 14, 2011 and April 12, 2017.

Plaintiff's overtime rate is one and one half times his regular hourly rate of pay. 12 N.Y.C.R.R. § 142-2.2. Plaintiff alleges that SQ Brooklyn and SQ Corona paid him as follows:

---

[3] Plaintiff began working for defendants in September 2009. Lopez Decl. ¶ 4. However, due to the NYLL six-year statute of limitations, plaintiff may only seek damages for the six-year period prior to the filing of the complaint on July 14, 2017. See Memo at 14, n.2; N.Y. Lab. Law § 663(3).

**TABLE A[4]**

| DATE RANGE[5] | EMPLOYER | REGULAR RATE OF PAY[6] | OVERTIME RATE OF PAY[7] |
|---|---|---|---|
| July 14, 2011– December 2015 | SQ Brooklyn | $10.50 | $15.75 |
| January 2016– April 17, 2016 | SQ Brooklyn | $9.75 | $14.63 |
| April 18, 2016– May 15, 2016 | SQ Corona | $9.75 | $14.63 |
| May 16, 2016– April 12, 2017 | SQ Corona | $9.50 | $14.25 |

Plaintiff may recover unpaid overtime wages for work performed between July 14, 2011 and April 12, 2017. He estimates that he worked sixty-six hours per week. Lopez Decl. ¶ 9. Because plaintiff The Court calculated "Weeks Unpaid" using plaintiff's estimation that he took four weeks of vacation per year.[8] See id. ¶ 10. As such, plaintiff worked approximately twenty-six hours of overtime per week for a period of 272 weeks. His overtime wage calculations are as follows:

---

[4] Counsel's narrative explanation of the dates plaintiff worked and the rate of his pay is confusing. In the future, Mr. Hassan is respectfully requested to present the information regarding the dates a plaintiff worked and the rate of plaintiff's pay in a table as above.
[5] Memo at 9; see also Lopez Decl. ¶¶ 4–5; Compl. ¶ 16.
[6] See Lopez Decl. ¶¶ 11–13.
[7] 12 N.Y.C.R.R. § 142-2.2.
[8] There were errors in the number of weeks plaintiff worked as set forth by plaintiff. The Court adjusted the calculations. For instance, plaintiff worked from January 2016–April 17, 2016 and stated this was 16 weeks for the purpose of his calculations. Memo at 9. However, there are only 15 weeks and 2 days between January 2016–April 17, 2016. Moreover, plaintiff's calculation does not account for any vacation time. Accordingly, the Court adjusted the number of weeks plaintiff worked from 16 weeks to 14 weeks.

**TABLE B**

| DATE RANGE | OVERTIME PREMIUM[9] | OVERTIME HOURS PER WEEK | WEEKS UNPAID | SUBTOTAL | TOTAL DUE |
|---|---|---|---|---|---|
| July 14, 2011– December 2015 | $5.25 | 26 hours | 211 weeks | $28,801.50 | $30,577.82 from SQ Brooklyn |
| January 2016– April 17, 2016 | $4.88 | 26 hours | 14 weeks | $1,776.32 | |
| April 18, 2016– May 15, 2016 | $4.88 | 26 hours | 4 weeks | $507.52 | $5,818.02 from SQ Corona |
| May 16, 2016– April 12, 2017 | $4.75 | 26 hours | 43 weeks | $5,310.50 | |
| **OVERTIME WAGES DUE:** | | | | | $36,395.84 |

Accordingly, it is respectfully recommended that plaintiff be awarded $30,577.82 against SQ Brooklyn and $5,818.02 against SQ Corona for unpaid overtime wages (totaling $36,395.84) as calculated in Table B.

### B. Liquidated Damages

Plaintiff seeks liquidated damages for the entire period of his employment under both the FLSA and the NYLL. Under the FLSA, an employer is liable, after violating overtime compensation law, for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Additionally, liquidated damages under the NYLL are calculated as 100% of the total amount of underpayments due to the employee. N.Y. Lab. Law § 663(1). However, plaintiff should not recover liquidated damages under both the FLSA and the NYLL, but instead, should recover under whichever statute provides for a greater recovery. Rana v. Islam, 887 F.3d 118, 123, n.3 (2d Cir. 2018); Chuchuca v. Creative Customs Cabinets Inc., No. 13 CV 2506 (RLM), 2014 WL 6674583, at *16 (E.D.N.Y. Nov. 25, 2014). Here, plaintiff's liquidated damages are greater under the NYLL than under the FLSA. See Rana, 887 F.3d at 123, n.3. Accordingly, plaintiff should be awarded a

---

[9] Overtime Premium = Overtime Rate of Pay less Regular Rate of Pay. See Table A, *supra*.

9

total of $36,395.84 in liquidated damages under the NYLL: $30,577.82 against SQ Brooklyn and $5,818.02 against SQ Corona.

### C. Statutory Damages

Plaintiff alleges that defendants did not provide wage notices or wage statements as required under NYLL § 195(1) and NYLL § 195(3). Lopez Decl. ¶¶ 14–15.

#### i. Wage Notices

"Beginning April 9, 2011, New York's Wage Theft Prevention Act ('WTPA') required employers to provide written wage notices 'at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer.'" Cazarez v. Atl. Farm & Food Inc., No. 15 CV 2666 (CBA) (RML), 2017 WL 3701687, at *5 (E.D.N.Y. May 31, 2017), adopted by, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017) (quoting N.Y. Lab. Law § 195(1-a) (eff. Apr. 9, 2011 to Feb. 27, 2015)). At the time of plaintiff's hiring, "[a]n employee who [was] not provided with this notice when hired [was] entitled to recover 'fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of twenty-five hundred dollars[.]'" Zhang v. Red Mountain Noodle House Inc., No. 15 CV 628 (SJ) (RER), 2016 WL 4124304, at *5 (E.D.N.Y. July 5, 2016), adopted by, 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016) (quoting N.Y. Lab. Law § 198(1-b) (eff. Apr. 9, 2011 to Feb. 27, 2015)). "After February 27, 2015, employees are entitled to damages of $50.00 per work day, up to $5,000." Reyes v. Art Tek Design, Ltd., No. 16 CV 5168 (ADS) (AYS), 2018 WL 614980, at *8 (E.D.N.Y. Jan. 11, 2018), adopted by, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018) (citations omitted). However, "this section has not been applied retroactively, so [the court] appl[ies] the provision effective as of [p]laintiff's hiring because it relates specifically to the notice that is required to be provided when an employee begins work." Ming Hui v. Shorty's Seafood Corp., No. 15 CV 7295 (RJD) (ST), 2017 WL 5054401, at

*10, n.12 (E.D.N.Y. Sept. 6, 2017), adopted by, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017). Here, plaintiff alleges that neither defendant provided plaintiff a wage notice when he commenced his employment. Lopez Decl. ¶¶ 14–15. Accordingly, the Court should award plaintiff the statutory maximum of $2,500[10] against SQ Brooklyn and the statutory maximum of $5,000 against SQ Corona for a total of $7,500.

### ii. Wage Statements

New York Labor Law § 195(3) provides that "every employer shall . . . furnish each employee with a statement with every payment of wages." The wage statement must list "information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." Rojas v. Splendor Landscape Designs Ltd., 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (citation omitted). From April 9, 2011 to February 25, 2015, if an employer failed to provide the employee with a wage statement, the employee was entitled to damages of $100 per week that the violation occurred, up to a maximum of $2,500. Li v. Leung, No. 15 CV 5262 (CBA) (VMS), 2016 WL 5369489, at *16 (E.D.N.Y. June 10, 2016), adopted as modified by, 2016 WL 5349770 (E.D.N.Y. Sept. 23, 2016) (modifying the number of weeks used in the calculations). After February 27, 2015, when the statute was amended, an employee is entitled to $250 per work day that the violation occurred, up to a maximum of $5,000. See N.Y. Lab. Law § 198(1-d) (amended 2015). Plaintiff did not receive any wage statements when employed by either defendant. Lopez Decl. ¶¶ 14–15. Accordingly, the Court should award plaintiff $5,000[11] in

---

[10] Plaintiff's counsel incorrectly requests $5,000. Memo at 17. As plaintiff's term of employment with SQ Brooklyn commenced before February 27, 2015, the maximum award is $2,500. See Ming Hui, 2017 WL 5054401, at *10, n.12.

[11] Plaintiff was employed by SQ Brooklyn from July 14, 2011–April 17, 2016. Applying New York Labor Law § 198(1-d) after the February 27, 2015 amendment to the period of plaintiff's employment from February 27, 2015 to April 12, 2017, plaintiff is entitled to the $5,000 statutory maximum. See Ming Hui, WL 5054401, at *11 (awarding $5,000 in wage statement statutory damages for plaintiff's March 2014–April 2015 employment period).

11

statutory damages against SQ Brooklyn and $5,000 in statutory damages against SQ Corona for a total of $10,000.

In sum, I respectfully recommend that plaintiff should be awarded $7,500 from SQ Brooklyn and $10,000 from SQ Corona in damages for defendants' failure to provide written notice and wage statements in violation of NYLL §§ 195(1) and 195(3) (totaling $17,500).

### D.  Post-Judgment Interest

Although plaintiff fails to request post-judgment interest, "[p]ost-judgment interest is mandatory in any civil case where money damages are recovered." Fermin v. Las Delicias Peruanas Restaurants, Inc., 93 F. Supp. 3d 19, 53 (E.D.N.Y. 2015) (quoting Duffy v. Oyster Bay Indus., Inc., No. 10 CV 3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011) adopted by, 2011 WL 2259749 (E.D.N.Y. June 2, 2011); see also Begum v. Ariba Disc., Inc., No. 12 CV 6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case). "[I]nterest shall be calculated from the date of the entry of judgment at [the federal] rate equal to the weekly average 1–year constant maturity Treasury yield . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 196(a); see Herrera v. Tri-State Kitchen & Bath, Inc., No. 14 CV 1695 (ARR) (MDG), 2015 WL 1529653, at *13 (E.D.N.Y. Mar. 31, 2015). Accordingly, I recommend that plaintiff should be awarded post-judgment interest at the default federal statutory rate "on all sums awarded commencing when the Clerk of the Court enters judgment until the date of payment." Herrera, 2015 WL 1529653, at *13; see Cardoza v. Mango King Farmers Mkt. Corp., No. 14 CV 3314 (SJ) (RER), 2015 WL 5561033, at *13 (E.D.N.Y. Sept. 1, 2015, adopted by, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015) (collecting cases).

### E. Attorney's Fees and Costs

As plaintiff's counsel does not request attorney's fees and costs, the Court does not recommend an award of attorney's fees and costs.

### F. Award Summary

In sum, the Court should award plaintiff the following:

**TABLE C**

| CATEGORY | TOTAL DUE AGAINST SQ BROOKLYN | TOTAL DUE AGAINST SQ CORONA | COMBINED TOTAL |
|---|---|---|---|
| Unpaid Overtime | $30,577.82 | $5,818.02 | $36,395.84 |
| NYLL Liquidated Damages | $30,577.82 | $5,818.02 | $36,395.84 |
| Statutory Damages | $7,500.00 | $10,000.00 | $17,500.00 |
| **COMBINED TOTAL** | $68,655.64 | $21,636.04 | $90,291.68 |

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion for a default judgment should be granted. A default judgment should be entered in plaintiff's favor against defendant SQ Brooklyn in the amount of $68,655.64 and against defendant SQ Corona in the amount of $21,636.04. The Court should award plaintiff post-judgment interest at the default federal statutory rate on all sums awarded from the date the Clerk of the Court enters judgment until the date of payment.

Plaintiff is hereby ordered to serve a copy of this Report upon defendants at their last known addresses and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: November 5, 2018
       Brooklyn, New York